**RECEIVED**

JUN 2 9 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ROBERT MANUEL                                        CIVIL ACTION NO. 08-0605

VERSUS                                                    JUDGE DOHERTY

MCDERMOTT GULF OPERATING CO., INC., ET AL.   MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before the Court are two motions: (1) Motion for Summary Judgment [Doc. 108]

filed by defendants Con Dive, LLC, LLOG Exploration Co., Inc., LLOG Exploration Offshore, Inc.,

LLOG Exploration & Production Co., and LLOG Energy, LLC (the "Con Dive/LLOG defendants");

and (2) Motion for Summary Judgment [Doc. 109] filed by defendants Secunda Atlantic, Inc.,

Secunda Marine Atlantic Ltd, and Secunda Marine Services, Ltd. (The "Secunda defendants") (all

movants collectively referred to as "defendants" unless otherwise noted).  The motion filed by the

Secunda defendants essentially piggybacks and adopts the motion filed by the Con/Dive LLOG

defendants, in which movants seek dismissal of plaintiff's claims on grounds he is not a Jones Act

seaman.[1]  Plaintiff opposes both motions [Docs. 143 & 144], and the Con Dive/LLOG defendants

have filed a Motion for Leave to File Memorandum in Reply to Opposition to Motion for Summary

Judgment [Doc. 145], which is herein GRANTED.

For the following reasons, both motions for summary judgment are GRANTED, and all

---

[1] The Con/Dive motion for summary judgement states, "Since plaintiff cannot demonstrate that he is a Jones Act "seaman," any claims pursuant to this Act are improper.  Accordingly, this action should be dismissed against these defendants with prejudice....."  *See* Memorandum in Support of Motion for Summary Judgment, Doc. 108, p. 3.

The Secunda motion for summary judgment seeks to have dismissed "any and all claims of Plaintiff, Robert Manuel, under the Jones Act, the general maritime law of unseaworthiness, for maintenance and cure, and for punitive damages for failure to pay maintenance and cure."  *See* Motion for Summary Judgment, Doc. 109, at p. 1.

claims alleged under the Jones Act against the foregoing defendants are DISMISSED WITH PREJUDICE.

## I.     Factual and Procedural Background

The instant lawsuit arises out of injuries allegedly sustained by the plaintiff, an employee of Tesla Offshore, LLC ("Tesla), who, at the time of his accident, was working aboard the DSV THEBAUD SEA as a surveyor.  The following facts are not disputed by the parties:

- At the time of the plaintiff's accident, a time charter agreement between Con Dive and Secunda was in effect, in which Con Dive chartered Secunda's vessel for work to be performed for the benefit of LLOG.  Specifically, Con Dive chartered Secunda's vessel to fulfill its contract with LLOG to install two inch risers on platforms located in the Gulf of Mexico.

- Con Dive also contracted with Tesla for survey services.  Plaintiff's job as a surveyor was to position the boat over the seabed where the work was to be performed.  As part of his job, plaintiff "had to navigate the boat out there" using computerized survey equipment installed on the bridge of the THEBAUD SEA.

- The vessel's crew used information provided by the survey equipment to steer the vessel to the correct location.

- After arriving at the work site, the Tesla surveyors were required to continuously monitor the survey equipment, which showed where the divers were working, to ensure the vessel was maintained in the proper position.

- On or about November 26, 2006, plaintiff alleges he fell down an internal stairwell of the vessel suffering injuries as a result of the negligence of the defendants and the unseaworthiness of the vessel.  At the time of his injury, plaintiff alleges he was responding to a direct order from the vessel's first officer, who was operating the vessels' dynamic positioning controls.

- Immediately before his accident, plaintiff had worked aboard the THEBAUD SEA for two weeks before returning with the vessel to shore for four days because of weather.  Plaintiff went back out with the vessel and worked for an additional four to five days before his injury on November 26, 2006.

- Prior to his accident, plaintiff had been assigned to work aboard the THEBAUD SEA on several occasions, spanning approximately one to one and a half months.

- As a surveyor, Tesla assigned plaintiff to work aboard various vessels owned by different companies during the course of his employment.

- During the course of plaintiff's employment with Tesla, plaintiff worked aboard 15-20 different vessel, each of which was owned by a different company.

- Of the 15-20 vessels plaintiff worked aboard during his employment with Tesla, none were owned by Tesla.

Plaintiff filed the instant lawsuit on May 5, 2008 against the Con Dive/LLOG entities, alleging he sustained personal and psychological injuries as a result of the negligence of the defendants and the unseaworthiness of the THEBAUD SEA, in addition to defendants' breach of their obligation to provide plaintiff a safe place to work.  Plaintiff alleges he is "entitled to damages under the Jones Act."  The plaintiff subsequently amended his complaint to add the Secunda entities as defendants.

On May 19, 2011, defendants filed their motions for summary judgment, contending plaintiff's "claims" should be dismissed, as he is not a Jones Act seaman entitled to the benefits of that Act.  It appears the movants seek dismissal of all of the plaintiff's claims in this matter. However, because the motions for summary judgment do not indicate, with clarity, all of the claims pled by the plaintiff with respect to each particular defendant, it is unclear to this Court whether this ruling is dispositive of the entire case.  The parties are given instructions at the conclusion of this Ruling regarding this issue.

## II.    Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim.  Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e).  As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*,

16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990), *quoting Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986)).  The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts

-4-

specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted). The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III.   Law and Analysis

It is well-settled a determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury. *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991). However, judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion. *See Harbor Tug and Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), *citing Becker v. Tidewater, Inc.,* 335 F.3d 376, 386 (5th Cir. 2003). *See also Pavone v. Mississippi Riverboat Amusement Corp.,* 52 F.3d 560, 565 (5th Cir. 1995) (the determination of seaman states is generally one of fact, however, seaman status may be decided on summary judgment where the evidence does not support a finding, as a matter of law, that the claimant is permanently assigned to a Jones Act vessel), *citing Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir. 1990). The Supreme Court has stated "[t]he inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it." 111 S.Ct. at 818.

To determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act, the Supreme Court, as interpreted by the Fifth Circuit, has established a two-prong test. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Becker,* 335 F.3d at 386, *citing Chandris, Inc. v. Latsis,* 515 U.S. 347, 368, 115 S.Ct. 2172 (1995). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id.*

The Fifth Circuit has stated satisfying the first prong of the test is relatively easy: the claimant

need only show that he "do[es] the ship's work." *Becker*, 335 F.3d at 387-88, *citing Chandris*, 515 U.S. at 368. *See also In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir.2000). This threshold requirement is "very broad," encompassing "all who work at sea in the service of a ship." *Id.* In *Becker*, the court held this factor was easily met because plaintiff "filled one of the [vessel's] crew positions and engaged in the vessel's work while on board." *Id.* at 388.

In the instant case, in the initial briefing filed by the parties, the parties do not appear to dispute that the plaintiff satisfies the first prong, that is, the plaintiff was assigned to work on the THEBAUD SEA, a vessel, and the plaintiff worked as a surveyor working in the service of the ship. However, in its reply brief, the Con Dive/LLOG entities argue it need not address the first prong of the test, because it has presented sufficient evidence to show there is no genuine issue of material fact regarding plaintiff's ability to demonstrate a connection to any vessel. Because this Court concludes the plaintiff does not establish the second prong of the test for seaman status, this Court need not address the first prong, a prong, this Court notes, that has not been adequately briefed by the parties in any respect.

Rather, resolution of whether the plaintiff in this matter is a Jones Act seaman depends on whether plaintiff can demonstrate a substantial connection to a vessel or group of vessels. Because it is undisputed the THEBAUD SEA is a vessel in navigation, the only remaining question is whether plaintiff's connection to the THEBAUD SEA is substantial in duration and nature, therefore warranting coverage under the Jones Act. The requirement of a substantial connection to a vessel is intended "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *Becker*, 335 F.3d at 388, *citing Chandris*, 515 U.S. at 368. As the Supreme Court has

Case 6:08-cv-00605-RFD-CMH   Document 146   Filed 06/29/11   Page 8 of 23 PageID #: 1902

noted,

> the total circumstances of an individual's employment must be weighed to determine
> whether he had a sufficient relation to the navigation of the vessels and the perils
> attendant thereon. The duration of the worker's connection to a vessel and the nature
> of the worker's activities taken together, determine whether a maritime employee is
> a seaman because the ultimate inquiry is whether the worker in question is a member
> of the vessel's crew or simply a land-based employee who happens to be working on
> the vessel at a given time.

*Chandris*, 515 U.S. at 370, *cited in Becker*, 355 F.3d at 388.  The Supreme Court has noted the

second prong constitutes a "status-based" standard— *i.e.,* "it is not the employee's particular job that

is determinative [of seaman status], but the employee's connection to a vessel." *Chandris,* 515 U.S.

at 364.  By invoking a status-based standard, the Supreme Court rejected a so-called "voyage test"

in which "anyone working on board a vessel for the duration of a 'voyage' in furtherance of the

vessel's mission has the necessary employment-related connection to qualify as a seaman." *Becker*,

355 F.3d at 388, *citing Chandris,* 515 U.S. at 358.

    While seaman status is not simply a temporal concept, the amount of time a worker spends

aboard a vessel in navigation is helpful in determining if that worker has attained seaman status.

*Chandris*, 515 U.S. at 371.  The Fifth Circuit has quantified the duration of time necessary to allow

submission of the issue of seaman status to a jury by using a 30 percent rule of thumb. "[A]s a

general rule, [a worker] must show [substantial duration] by demonstrating that 30 percent or more

of his time is spent in service of that vessel." *Becker*, 355 F.3d at 388, *citing Roberts v. Cardinal

Servs. Inc.,* 266 F.3d 368, 375 (5th Cir.2001).  The Supreme Court endorsed this thirty-percent rule

in *Chandris. Chandris*, 515 U.S. at 371.  After *Chandris,* the Fifth Circuit reaffirmed the 30–percent

rule. *See Nunez v. B&B Dredging, Inc.,* 288 F.3d 271, 277 (5th Cir.2002) (because plaintiff spent

only approximately 10 percent of his work time aboard a vessel in navigation, he did not qualify for

-8-

seaman status as a matter of law).

In the instant case, defendants argue the plaintiff was not a seaman entitled to damages under the Jones Act, because "he cannot demonstrate that he had any employment connection to any vessel, or an identifiable group of vessels, substantial in both nature and duration." Specifically, defendants contend that during plaintiff's entire employment with Tesla – which lasted from an unspecified date in 2005 to November 26, 2006, the date of his injury – plaintiff only worked on board the THEBAUD SEA for a total period of one month.[2]  This Court concludes, based on the plaintiff's testimony, that the total time plaintiff worked on board the THEBAUD SEA was closer to two months.  Regardless, defendants argue plaintiff did not spend thirty percent (30%) of his working time on any single vessel, including the THEBAUD SEA, nor did he spend thirty percent of his working time on any group of vessels under common control or ownership.  The latter portion of the foregoing argument pertains to what the courts and the bar typically refer to as the "fleet rule."

First, it is clear the plaintiff did not work on board the THEBAUD SEA for at least 30% of the total time he worked for Tesla.  Even though no party has indicated *when* in 2005 the plaintiff began his employment with Tesla, even if plaintiff began his employment with Tesla on the last day of December 2005, he did not spend 30% of his time working on board the THEBAUD SEA.  Thus, the real issue for this Court's determination is whether the plaintiff spent 30% of his work time on "an identifiable group of vessels."

Defendants argue the plaintiff did not work on an identifiable group of vessels, because of

---

[2] The defendants base this argument on plaintiff's testimony that he worked on the THEBAUD SEA for a two-week period prior to his accident; came in from that job and then went back out again for four or five days and was injured; and in addition to that, worked on the THEBAUD SEA six or seven times, for a total of "one month or a month and a half."  *See* deposition of Robert Manuel, attached as Exhibit "A" to Con Di've LLOG's motion for summary judgment, Doc. 108, at p. 28, and supplemental deposition of Mr. Manuel, attached as Exhibit "B" to Doc. 108, at p. 6 & 126-27.

the 15-20 vessels he worked on during his employment with Tesla, none were owned by the same entity. The defendants go on to argue "the fleet rule applies only when the vessels are under common control or ownership." This Court finds the defendants, perhaps, overreach in this broad statement, and a bit of jurisprudential background is necessary on this point.

In *Bertrand v. Int'l Mooring & Marine, Inc., et al.*, 517 F.Supp. 342 (W.D. La. 1981) – decided before the Supreme Court's decision in *Chandris* – the trial court considered the issue of whether plaintiffs, who were members of an anchorhandling crew for International Mooring and Marine, Inc. (IMM), were seaman. The plaintiffs had sued to recover for injuries sustained in a one-vehicle accident while returning from a one-week relocation job. The nature of the plaintiffs' work was that almost all (90%) of their work was vessel-related; the plaintiffs were assigned to work on different vessels, sometimes for one job only, but were sometimes assigned to a particular vessel at different times for different jobs; the average duration of each vessel-related job was substantially equivalent to those of the other crew members; and the vessels on which the plaintiffs worked were not owned by one entity. Concluding "one cannot be a member of a crew of numerous vessels which have no common ownership or control," the trial court granted summary judgment in favor of IMM on the seaman status issue, finding plaintiffs were not seaman. *Id.* at 348.

On appeal, the Fifth Circuit reversed, stating:

> We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works. Instead, we have specifically held that in the context of the single vessel, the employer need not be the owner or operator of the vessel for Jones Act liability to attach. To require common ownership or control when seamen work on several vessels but not when they work on a single vessel is inconsistent with the liberal construction of the Jones Act that has characterized it from the beginning and is inconsistent with its purposes.

-10-

*Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir. 1983) (internal citations omitted).

In making this determination, the Fifth Circuit emphasized "this anchor-handling crew was continuously subjected to the perils of the sea like blue water seamen and was engaged in classical seaman's work," and furthermore, that "whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work[,]" stating:

> In [Bertrand], IMM chose to borrow the Aquamarine 503 from Tenneco, the customer whose drilling rig was being relocated. The vessel was then specifically outfitted for the mission and the customer was billed only for the services of the anchorhandling crew. On occasion, however, IMM chartered vessels directly for their own use and billed the customer for the chartered vessel as well as for the services of the anchorhandling crew. Thus, if the anchorhandlers satisfied the *Robison* test, Jones Act coverage would not be precluded by the mere fact that IMM had chartered the vessels used by the anchorhandlers. Moreover, had IMM chosen to own rather than charter the vessels, the Jones Act clearly would cover workers meeting the *Robison* criteria. In light of the purposes of the Jones Act, we will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned.

*Id.* at 245 (internal citations omitted).

The court went on to note: "For a claimant to satisfy the substantial work prong of *Robison*,[3] "'it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity.'" *Id.* at 246. In concluding the plaintiffs in *Bertrand* made the requisite showing, the Court emphasized the following factors: the anchorhandling crew worked on 25 vessels and approximately 90% of the work was performed aboard the vessels; the anchorhandling crew was regularly and continuously assigned to vessel-related activity; the plaintiffs' entire employment involved preparing to work or working from a vessel; with respect to

---

[3] This Court notes the Fifth Circuit's approach to determining seaman status, as set forth in *Robison*, was overturned in *Chandris*, however, as explained below, the "fleet rule" was not abrogated by *Chandris*.

their service upon the vessel, the crew actually went to sea and ate and slept aboard the vessels; the plaintiffs' tour of duty with a vessel was for the duration of the vessel's mission, thus the mission of the vessel and the plaintiffs' job were co-extensive, that is, when the plaintiffs finished their responsibilities, the vessels' mission was completed; the nature of the plaintiffs' work was such that they never worked except in conjunction with one of these vessels; the anchorhandlers' work for the vessels was their primary duty, and not merely incidental to work on shore or to a non-vessel; and the anchorhandlers aided in readying the vessel for its mission.  Considering the foregoing factors, the Fifth Circuit reversed the trial court, concluding reasonable persons could conclude the plaintiffs were Jones Act seaman, and summary judgment in favor of IMM was therefore inappropriate. *Id.* at 248.

One year later, in *Hall v. Diamond M Company*, 732 F.2d 1246 (5th Cir. 1984), again, pre-dating *Chandris*, the Fifth Circuit reversed the decision of a trial court granting summary judgment in favor of Diamond M on similar grounds.  In *Hall*, the plaintiff was employed as an offshore rigger by Transocean, which was under contract with defendant Diamond M to provide the labor and small tools necessary to move a submersible drilling rig owned by Diamond M.  Plaintiff was working on his third trip offshore at the time he was injured.[4]  The record showed plaintiff had worked once previously on the vessel on which he was injured for a few days, and before that on another vessel for two days.  The evidence showed anchor-moving jobs usually lasted from 2 to 5 days; anchorhandlers remained on the vessel supplied to Transocean; and because various vessels were supplied to Transocean by its customers, there was no single vessel or particular fleet of vessels to

---

[4] The plaintiff in *Hall* worked both onshore and offshore for defendant Diamond M.  Plaintiff worked as an anchorhandler while offshore, but also agreed to work onshore if there was no work available offshore.  At the time of his injury, the plaintiff had worked 128 hours on land and 227 hours offshore. *Hall*, 732 F.2d at 1248.

which the anchorhandlers might be assigned. *Hall*, 732 F.2d at 1248. Relying on the district court's decision in *Bertrand*, and particularly that portion of the ruling in which the district court had concluded there was no "connection" among the vessels within the pool of vessels on which the plaintiff might be assigned to work, plaintiff had not been assigned permanently to a group of fleet of vessels the trial court granted summary judgment in favor of Diamond M. *Id.* at 1247-48. The Fifth Circuit reversed, noting the district court's decision in *Bertrand* had been reversed. *Id.* at 1249.

Despite the expansive interpretation of the "fleet rule" in *Bertrand*, the Fifth Circuit has strictly limited *Bertrand* to its facts. *See Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 311 (5th Cir. 1984) ("*Bertrand* must be read in light of the factual situation it involved."). In *Buras*, the plaintiff was employed by defendant as a coal sampler and temperature taker who tested coal on various barges, ships, and land-based coal stockpiles. Plaintiff injured his back while on board a coal-transporting barge and brought suit under the Jones Act. The district court granted summary judgment in favor of defendant on the issue of seaman status, concluding plaintiff was not a seaman. *Buras*, 736 F.2d at 308-09.

On appeal, the Fifth circuit affirmed, explaining:

There is no doubt that Buras was not "assigned permanently to a vessel" or vessels. We have noted that this requirement has not been given a "wooden application," and have characterized the permanency inquiry as being "more frequently an analytical starting point than a self-executing formula." It is clear, however, that to be deemed a Jones Act seaman the claimant must have "more than a transitory connection" with a vessel or group of vessels. Our focus in this regard is " 'meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for a relatively short period of time.' Thus, as we stated in *Bertrand*, "we review the facts in light of factors evincing a vessel relationship that is substantial in point and time and not merely spasmodic."

*Id.* at 310 (internal citations and footnotes omitted), *citing Bertrand*, 700 F.2d at 247.

-13-

The court noted the plaintiff was randomly assigned to a given vessel or land-based stockpile to test the temperature of coal; tested between 5 and 50 barges per day, depending on the number of vessels coming through the fleeting facilities; on the day he was injured, plaintiff had already tested the coal on 13 or 14 barges; and plaintiff's contact with a given vessel was short in duration and limited to the administration of a temperature test. Thus, the court deemed plaintiff's connection to the vessels to be "transitory." *Id.* at 310. The court further distinguished the plaintiffs in *Bertrand* from the plaintiff in *Buras* and clarified its holding in *Bertrand*:

> Although *Bertrand* thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, *we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that Bertrand rejected the identifiable or recognizable fleet requirement established by our prior cases.* Rather, *Bertrand* must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership. We noted that in *Bertrand* that "whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work," and that on occasion the claimants' employer chartered vessels directly.   It was clearly established, furthermore, that the *Bertrand* claimants were, arguably at least, "classical blue water" workers engaged in traditional maritime activities. We were unwilling to conclude, therefore, that the happenstance of a particular ownership or chartering arrangement should control the determination of seaman status as a matter of law.
>
> We note as well that we did not in *Bertrand* reject the "totality of the circumstances" approach to the question of seaman status. Rather, we explicitly reiterated that the substantial work inquiry is dependent on the total circumstances of the claimant's employment, and noted that "[a]s the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory .... [T]o the extent that [the factors] reveal the nature and location of a claimant's work, they should be considered when applying the *Robison* criteria."

Because the claimants in *Bertrand* spent one hundred per cent of their time performing vessel-related work; because their job was coextensive in time with the mission of the vessel; because their entire employment involved preparing to work or working from a vessel; because the evidence could reasonably have given rise to the conclusion that they were "continuously subject to the perils of the sea like blue water seamen and [were] engaged in classical seaman's work;" and because they ate and slept aboard vessels and went to sea, we held that the *Bertrand* plaintiffs could have been found to have satisfied the substantiality prong of *Robison*, and summary judgment was improper.

In the instant case, by contrast, the lack of common ownership or control of the vessels upon which Buras worked was determined by the very nature of his employment, not by a fortuitous ownership or chartering arrangement within the control of his employer. Buras neither ate nor slept aboard a vessel, nor did he go to sea. He spent at least twenty-five per cent of his working time on land. He reported to his supervisor's house each morning to pick up his daily orders, and then went by truck to his assigned location. Moreover, Buras does not contend that he was assigned to an identifiable fleet, but rather to identifiable fleeting facilities. We have never held that such a relationship is sufficient to confer seaman status. The aggregation of these factors clearly indicate that Buras is not entitled to seaman status.

*Id.* at 307 (emphasis added) (internal citations omitted).

Since *Buras*, and notwithstanding *Bertrand*, the Fifth Circuit has continued to apply the "fleet rule" in narrow terms. Even before the Supreme Court's decision in *Chandris*, in *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987), the court held a wireline operator employed by Sperry whose duties included surveying oil wells and operating wireline and steering tools both on shore and on moveable drilling rigs offshore was not a seaman. The court noted Sperry did not own or lease any offshore rigs or vessels but rather was an independent contractor which sent workers to any concern requesting its services. During plaintiff's 4-year employment with Sperry, he spent 75-80% of his time offshore working on special purpose drilling rigs; each assignment lasted between one and fifteen days; he ate and slept aboard the drilling rigs; and in his 4 years with Sperry, he worked for 23 different companies aboard movable rigs, all within the Gulf of Mexico. *Lirette*, 831 F.2d at

-15-

555. Plaintiff injured his knee while working on a rig and filed suit invoking Jones Act jurisdiction. The trial court held the plaintiff failed to establish he was permanently assigned to an identifiable vessel or fleet of vessels. *Id.* at 555.

On appeal, the plaintiff argued he was a seaman under the court's in *Bertrand.* However, the Fifth Circuit rejected plaintiff's argument, noting the "fleet rule" is still in effect in this circuit:

> Lirette does not fall within the *Bertrand* exception to the common ownership or control requirement because he did not perform the traditional duties of a blue water seaman during his tenure with Sperry. He was a wireline operator who performed one specialized job for many different vessels. He did not spend his entire employment preparing to work or working aboard a single vessel. Although he ate and slept aboard vessels, he never worked aboard the drilling rigs for the duration of their mission. Sperry did not own, charter or lease any vessels in the course of its contracting work. His duties closely resembled those of a transitory maritime worker. As we stated in *Barrett,* the distinction between seamen and transitory maritime workers is fundamental and may not be blurred.

*Id.* at 557, *citing Langston v. Schlumberger Offshore Services, Inc.,* 809 F.2d 1192, 1194 (5th Cir.1987) (wireline operator who had performed jobs for 10 unrelated owners aboard 15 distinct vessels was not a seaman for Jones Act purposes because the "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet."). *See also St. Romain v. Industrial Fabrication and Repair Service, Inc.,* 203 F.3d 376, 380 (5th Cir. 2000) ("Our later decisions clearly reflect that the court in *Bertrand* was concerned with denying seaman status to anchorhandlers, traditional maritime workers, merely because of the contractual arrangements made by their employer. Our decisions after *Bertrand* have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels.").

This Court also notes the case of *Willis v. Fugro Chance, Inc.,* 278 F.ed Appx. 443 (5th Cir.

2008), not for its precedential value,[5] but because, like the instant case, the plaintiff in *Willis* was a surveyor. In *Willis*, defendant Fugro Chance provided a range of services to the energy industry, including positioning offshore drilling rigs, production platforms, and pipeline barges, and in his capacity as a survey party chief, plaintiff assisted in moving vessels and other devices (rigs, barges and vessels) from dry-docks, harbors, and similar places to drill site locations. Plaintiff was responsible for "consulting global positioning satellites, maps, and Fugro Chance's database and notifying the rig mover of potential underwater obstructions and hazards. Relying on information from [plaintiff] as well as his own observations of the monitors, the rig mover would then order tug boat captains to make the proper navigational adjustments." *Willis*, 278 Fed. Appx. at 444. Plaintiff filed suit after he was exposed to mercury and other toxic chemicals while aboard a submersible offshore drilling rig leased and operated by Century Exploration New Orleans, Inc., but owned and "crewed" by Noble Drilling Services, Inc. At the time of the accident, Fugro Chance had been retained by Century Exploration to provide navigational information to the rig mover in order to assist him in moving the rig from a shipyard in Mississippi to an offshore location. This information was to be provided by plaintiff and two assistants while aboard the rig. *Id.* at 444.

After his injury, the plaintiff sued Fugro Chance under the Jones Act, and the district court granted summary judgment in favor of Fugro Chance on the issue of seaman status. On appeal, the plaintiff argued he spent the majority of his time working at sea, and further, that the district court's application of the "fleet rule" was inconsistent with the court's ruling in *Bertrand*. *However, the Fifth Circuit noted even if the record supported plaintiff's contention that he is the type of maritime worker that Congress intended to protect under the Jones Act because his employment "regularly*

---

[5] *Willis* is an unpublished case and, therefore, has no precedential value.

exposes him to the perils of the sea," the Fifth Circuit has held *Bertrand* is limited to its specific

facts. *Id.* at 446-47 (emphasis added). Because the Fifth Circuit concluded Fugro Chance neither

owned nor exercised control over any of the vessels upon which plaintiff worked, the Fifth Circuit

affirmed the trial court's decision that plaintiff was not a seaman. *Id.* at 447.

The "fleet rule," espoused by the Fifth Circuit in *Bertrand*, has survived the Supreme Court's

decision in *Chandris*. In *Roberts v. Cardinal Services*, 266 F.3d 368 (5th Cir. 2001), the court stated:

> The 30 percent floor does not change when an "identifiable group" of vessels in
> navigation is at issue, rather than just one vessel. In addressing the case before us in
> *St. Romain v. Industrial Fabrication and Repair Service, Inc.,* we summarized our
> ruling in *Hufnagel v. Omega Service Industries, Inc.* observing,
>
> > We held that Hufnagel did not qualify as a seaman because he could
> > not establish a substantial connection to *either* a single vessel *or* to an
> > identifiable fleet of vessels....**Our decisions after *Bertrand* have
> > reaffirmed the essential principle that to qualify as a seaman an
> > employee must establish an attachment to a vessel *or to an
> > identifiable fleet of vessels.***

*Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 375 (5th Cir. 2001) (emphasis added) (internal

footnotes omitted), *citing St. Romain, supra,* and *Hufnagel v. Omega Service Industries, Inc.*, 182

F.2d 340 (5th Cir. 1999). The Fifth Circuit went on to note "[w]e have left no doubt that the 30

percent threshold for determining substantial temporal connection must be applied, *regardless of

whether one vessel or several are at issue.*" *Cardinal Services*, 266 F.3d at 375 (emphasis added).

Indeed, in *Chandris*, the Supreme Court discussed the Fifth Circuit's modification of the test

for seaman status when more than a single vessel is involved, stating "[s]oon after *Robison,* the Fifth

Circuit modified the test to allow seaman status for those workers who had the requisite connection

with an "identifiable fleet" of vessels, a finite group of vessels *under common ownership or control.*

*Chandris,* 515 U.S. at 366, 115 S.Ct. 2172, *citing Braniff v. Jackson Avenue–Gretna Ferry, Inc.,* 280

F.2d 523, 528 (5th Cir.1960) (emphasis in original). Later, in *Harbor Tug & Barge Co. v. Papai*, 520

U.S. 548, 556-57, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), the Supreme Court further explained:

> We ... adverted to the group of vessels concept in *Chandris*. We described it as a rule
> "allow[ing] seaman status for those workers who had the requisite connection with
> an 'identifiable fleet' of vessels, a finite group of vessels under common ownership
> or control."...

Following *Chandris* and *Papai*, in deciding whether there is an identifiable group of vessels

of relevance for a Jones Act seaman-status determination, it is well-settled in the Fifth Circuit that

*the question is whether the vessels are subject to common ownership or control. See Cardinal*

*Services*, 266 F.3d at 375-76.

In the instant case, the plaintiff argues "all of the reasons the Fifth Circuit gave in *Bertrand*

are applicable to his work" for Tesla, including: (1) he spent 100% of his time performing vessel-

related work, i.e., gathering information needed to navigate the vessel to its intended destination; (2)

his entire employment involved preparing to work for, or working from, a vessel; (3) he ate and slept

aboard vessels; and (4) he was continuously subject to the perils of the sea like blue water seamen.

This Court is cognizant of the fact that the plaintiff in the instant case performed almost all

of his work in relation to and with vessels and his employment "regularly expose[d] him to the perils

of the sea." However, there are important factors the court in *Bertrand* emphasized that do not exist

in this case, or at least, that the plaintiff has not argued. For instance, in *Bertrand*, it was significant

to the Court that the plaintiffs' "tour of duty with a vessel was for the duration of the vessel's

mission, thus the mission of the vessel and the plaintiffs' job were co-extensive, that is, when the

plaintiffs finished their responsibilities, the vessels' mission was completed." *Bertrand*, 700 F.2d

at 248. The same has not been argued by the plaintiff in this case. In fact, the plaintiff's job as a

surveyor in the instant case appears to be more akin to the job performed by the plaintiff in *Willis*,

in which the Court held that "even if the record supported plaintiff's contention that he is the type of maritime worker that Congress intended to protect under the Jones Act because his employment 'regularly exposes him to the perils of the sea,'" the plaintiff was not a seaman, because plaintiff's employer neither owned *nor exercised control over* any of the vessels upon which plaintiff worked, including the vessel upon which the plaintiff was injured. Thus, in *Willis*, the court reiterated – as it has done on numerous occasions since the *Bertrand* decision -- that *Bertrand* is limited to its specific facts, and the Fifth Circuit does not "*broadly . . . . confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time*."

Additionally, the plaintiffs in *Bertrand* never worked except in conjunction with one of the vessels in question; the work they provided on the vessels was their primary duty, and not merely incidental to work on shore or to a non-vessel; and the plaintiffs aided in readying the vessel for its mission. There is an absence of similar facts in this case.

Indeed, *Bertrand* appears to have been a unique case in the history of the "fleet rule," a case in which the Court was concerned with "prevent[ing] the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet *in every respect except common control or ownership*." *Buras*, 736 F.2d at 311, *citing* 700 F.2d at 245. Indeed, the plaintiffs do not cite additional cases with similar fact patterns wherein the plaintiff was found to be a seaman in reliance on the *Bertrand* exception. This Court's limited research found only one other case with a similar fact pattern concluding the plaintiff was a seaman – *Wisner v. Professional Divers of New Orleans*, 731 So.2d 200 (La. 1999). In *Wisner*, the court concluded the plaintiff, a *diver*, was a seaman, despite the fact

that he did not have a substantial connection to a fleet under common ownership or control, because

a diver "faces regular exposure to the perils of the sea." Discussing the *Wisner* case and *Little v.*

*Amoco Production Co.*, 734 So.2d 933 (La. App. 1ˢᵗ Cir. 1999), a subsequent case decided by the

Louisiana Court of Appeals for the First Circuit, the Fifth Circuit stated:

> In the post- *Wisner* case of *Little v. Amoco Production Company,* the state appellate
> court noted first that the United States Supreme Court's interpretations are controlling
> in matters of federal law, clearly indicating that, in any disagreement between the
> application in *Wisner* and the test adopted in *Chandris* and *Papai,* the test enunciated
> in the latter controls. More substantively, the court of appeal posited that *Wisner*
> could be classified as falling within a "well-established exception" to the general 30
> percent substantial connection requirement. The exception, as defined by language
> in our pre- *Chandris* decision in *Bertrand,* would be that "Jones Act coverage should
> not be withheld because the vessels are not under the employer's common ownership
> or control, when claimants are continuously subjected to the perils of the sea and
> engaged in classical seaman's work." The court of appeal in *Little,* still highlighting
> the *Wisner* court's reliance on our language, noted that "[a] diver's work necessarily
> involves exposure to numerous marine perils, and is inherently maritime because it
> cannot be done on land. *It is not, like so many offshore field occupations, an art
> developed in land work and transposed to a maritime setting.*"

*Cardinal Services*, 266 F.3d at 377-78. Concluding the plaintiff "failed to demonstrate the presence

of all elements of the conjunctive test for . . . seaman status," the court concluded the plaintiffs'

attempt to bring plaintiff within a possible exception to the rule failed. *Id.* at 378.

In the instant case, the plaintiff worked on 15-20 vessels, all of which were owned by

different entities. The nature of the plaintiff's connection appears to be closer to the work performed

by the plaintiff in *Lirette, supra.* In *Lirette,* the plaintiff was a wireline operator who surveyed oil

wells and operated wireline and steering tools on moveable drilling rigs offshore, and spent 75-80%

of his time offshore working on special purpose drilling rigs, with each assignment lasting between

one and fifteen days. Like the plaintiff in the instant case, Lirette ate and slept aboard the drilling

rigs, and in four years with his employer, worked for 23 different companies aboard movable rigs.

The Fifth Circuit affirmed the trial court's ruling that Lirette failed to establish he was permanently assigned to an identifiable vessel or fleet of vessels. Similarly, in *Langston, supra,* the Fifth Circuit agreed a wireline operator who worked for 10 unrelated owners aboard 15 distinct vessels was not a seaman for Jones Act purposes because the "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet.").

The plaintiff's argument that he was regularly exposed to the "perils of the sea" also fails. In *St. Romain,* the plaintiff, a plug and abandon helper, made a similar argument. Relying upon language in *Chandris,* the court rejected this argument concluding plaintiff was not a seaman because he did not work aboard vessels under common ownership or control:

> St. Romain places great emphasis on his claim that in all his offshore assignments, whether he worked on the platforms or on the liftboats, he was regularly exposed to the "perils of the sea" faced by traditional seamen. We cannot agree. Whether St. Romain faced perils of the sea is not outcome determinative of seaman status.

*St. Romain,* 203 F.3d at 380-81 (internal footnote omitted), *citing Chandris,* 515 U.S. at 361 ("Seaman status is not coextensive with seaman's risks."). Here, the plaintiff performed surveyor's work, which, unlike a diver's work, is more akin to an art developed on land and transferred to a maritime setting.

Thus, in response to the motion for summary judgment, the plaintiff has not provided this Court with sufficient factual information for this Court to determine that plaintiff falls within the *Bertrand* exception. Considering the foregoing, this Court concludes the plaintiff is not a Jones Act seaman, as a matter of law, because plaintiff has not demonstrated he meets the requisite test, particularly that he had a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.

Considering the foregoing,

-22-

IT IS ORDERED that the Motions for Summary Judgment [Docs. 108 & 109] filed by defendants Con Dive, LLC, LLOG Exploration Co., Inc., LLOG Exploration Offshore, Inc., LLOG Exploration & Production Co., LLOG Energy, LLC, Secunda Atlantic, Inc., Secunda Marine Atlantic Ltd, and Secunda Marine Services, Ltd. are GRANTED, and all claims alleged under the Jones Act against the foregoing defendants are DISMISSED WITH PREJUDICE.

Because the motions for summary judgment do not indicate, with clarity, all of the claims pled by the plaintiff with respect to each particular defendant, it is unclear to this Court the impact the instant ruling will have on the remaining claims of the plaintiff, if any. Additionally, this Court notes there are a number of additional pending motions in this matter, including a motion for summary judgment on the issue of liability, a motion for summary judgment on the issue of borrowed servant status, and several motions in limine. In light of the foregoing, it is ORDERED that within five (5) days of the date of this Ruling, *counsel shall confer* to discuss the status of this case in light of the instant Ruling. Thereafter, within ten (10) days of the date of this Ruling, counsel shall jointly identify for this Court, in writing, which of the plaintiff's claims remain pending, against which defendants, as well as the overall status of the case, and the status of the remaining pending motions before the Court.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 29 day of June, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE